**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAMELA L. WRIGHT,                              )
                                               )
                    Plaintiff,                 )
                                               )          Civil Action No. 11-1304
          v.                                   )
                                               )          **ELECTRONICALLY FILED**
MICHAEL J. ASTRUE,                             )
Commissioner of Social Security,               )
                                               )
                    Defendant.                 )

## MEMORANDUM OPINION

**I.     INTRODUCTION**

Pamela L. Wright ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

review of the final determination of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for disability insurance benefits ("DIB") under Title II

of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act").  This matter comes before the court

upon cross-motions for summary judgment.  (ECF Nos. 11, 13).  The record has been developed

at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment

will be GRANTED, in part, and DENIED, in part, and Defendant's Motion for Summary

Judgment will be DENIED.

**II.    PROCEDURAL HISTORY**

Plaintiff filed for DIB with the Social Security Administration on April 21, 2008,

claiming an inability to work due to disability beginning January 3, 2006.  (R. at 107 – 16)[1].

Plaintiff was initially denied benefits on June 19, 2008.  (R. at 65 – 68).  A hearing was

---

[1]      Citations to ECF Nos. 9 – 9-14, the Record, *hereinafter*, "R. at __."

scheduled for October 15, 2009, and Plaintiff appeared to testify represented by counsel.  (R. at 28 – 60).  A vocational expert also testified.  (R. at 28 – 60).  The Administrative Law Judge ("ALJ") issued her decision denying benefits to Plaintiff on November 12, 2009.  (R. at 15 – 27).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on August 12, 2011, thereby making the decision of the ALJ the final decision of the Commissioner.  (R. at 1 – 5).

Plaintiff filed her Complaint in this Court on October 11, 2011.  (ECF No. 1).  Defendant filed its Answer on January 13, 2012.  (ECF No. 5).  Cross-motions for summary judgment followed.

## III.   STATEMENT OF THE CASE

In her decision denying DIB to Plaintiff, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010;
2. The claimant had not engaged in substantial gainful activity since January 3, 2006, the alleged onset date;
3. The claimant has the following severe impairment: fibromyalgia;
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1;
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that she would require a sit/stand option.  She should never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs.  She should only occasionally stoop, kneel, balance, crouch and crawl.  The claimant should avoid working around hazards such as dangerous moving machinery and unprotected heights.  She should avoid extremes of cold.  She should not perform constant overhead reaching.  The claimant would be limited to performing entry level work that does not involve intense concentration.  She would be limited to work involving instructions that can be written down;
6. The claimant is unable to perform any past relevant work;
7. The claimant was born on May 11, 1960 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged onset date;
8. The claimant has at least a high school education and is able to communicate in English;

2

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a findings that the claimant is "not disabled," whether or not the claimant has transferable jobs skills;

10. Considering the claimants age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and,

11. The claimant had not been under a disability, as defined in the Social Security Act, from January 3, 2006 through the date of this decision.

(R. at 17 – 26).

## IV.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

3

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V.    DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to give proper weight to the opinion of Plaintiff's primary care physician – Lawrence Zelonis, M.D. – that Plaintiff was completely disabled, and in failing give proper weight to Plaintiff's subjective complaints of pain and limitation.  (ECF No. 14 at 10 – 15).  Defendant argues that the ALJ's determination was supported by substantial evidence, because the record contained little objective proof to buttress Plaintiff's allegations.  (ECF No. 12).  Specifically, Defendant contends that Plaintiff's treating rheumatologist insinuated that Plaintiff was capable of full-time work, and that few of the assertions regarding disability by Dr. Zelonis and Plaintiff were based upon objective testing on the record.  (ECF No. 12 at 7 – 12).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding.  *Cotter*, 642 F.2d at 705 (citing *Chenery Corp.*, 318 U.S. at 94).  The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).  In the present case, the ALJ did not adequately meet her responsibilities under the law.  The medical record is replete with notations and observations of Plaintiff's fibromyalgia-related symptoms, all of which deserved greater attention.

1. *Medical Opinion of Dr. Zelonis*

Plaintiff had been treated by Dr. Zelonis as her primary care physician beginning in January 2005, and extending through September 2009. (R. at 254 – 67, 366 – 71, 399 – 400, 410 – 13). Plaintiff visited Dr. Zelonis on a relatively regular basis during this time period, and – though difficult to read – Dr. Zelonis' records make frequent mention of Plaintiff's fibromyalgia and adjustments in prescribed medication. (R. at 254 – 67, 366 – 71, 399 – 400, 410 – 13). In three written statements dated August 12, October 24, and November 15, 2008, Dr. Zelonis opined that Plaintiff was completely disabled due to pain and fatigue stemming from her diagnosed fibromyalgia. (R. at 398 – 400). He indicated that, over the years, a wide array of diagnostic testing had been utilized in an attempt to find a cause for Plaintiff's symptoms outside of fibromyalgia. (R. at 398 – 400). However, the results of the testing excluded all other causes. (R. at 398 – 400). Further, upon physical examination, Plaintiff exhibited every tender point indicative of fibromyalgia. (R. at 398 – 400). Dr. Zelonis indicated that attempts at treatment via medication, physical therapy, exercise, and acupuncture had all fallen short of providing significant relief. (R. at 398 – 400). Based upon his treatment history with Plaintiff, he concluded that it would be impossible for her to function for more than one or two hours at a time without experiencing pain and fatigue. (R. at 398 – 400). Dr. Zelonis' prognosis was poor, and he opined that Plaintiff's condition was progressively worsening. (R. at 398 – 400).

Dr. Zelonis also completed a Multiple Impairment Questionnaire on May 11, 2009. (R. at 401 – 08). In it, he indicated that Plaintiff experienced constant, severe pain and fatigue that would worsen if placed in a competitive work environment. (R. at 401 – 08). Plaintiff would only be capable of sustained activity for two hours at a time. (R. at 401 – 08). Plaintiff was capable of enduring moderate degrees of stress. (R. at 401 – 08). Despite her work ethic, Dr.

Zelonis felt that Plaintiff was incapable of work for a period of eight hours, regardless of her ability to change positions, sit, stand, lift, or carry.  (R. at 401 – 08).  He based his conclusions upon his lengthy treatment history, and specifically, his inability to mitigate Plaintiff's pain with medication.  (R. at 401 – 08).

The ALJ justified disregarding the above statements by Dr. Zelonis by citing the notes of rheumatologist Alan M. Berg, M.D., by looking at the results of diagnostic testing, and by considering the opinion of state agency evaluator Fox.  (R. at 24 – 25).  The Court of Appeals for the Third Circuit has held that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time."  *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F.2d 1348, 1350 (3d Cir. 1987)).  However, a showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight.  *Id.*

While it is not expected that the ALJ's explanation of the above issues match the rigor of "medical or scientific analysis" a medical professional might provide in justifying his or her decisions, it is expected that when rejecting a treating physician's findings or according such findings less weight, the ALJ will be as "comprehensive and analytical as feasible," and provide the factual foundation for his or her decision and the specific findings that were rejected.  *Cotter*, 642 F.2d at 705.  The explanation should allow a reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored."  *Fargnoli*, 247 F.3d at 42.

The ALJ "cannot reject evidence for no reason or for the wrong reason." *Morales*, 255 F.3d at

317 (citing *Mason*, 994 F.2d at 1066).  Moreover, the ALJ "should not substitute his lay opinion

for the medical opinion of experts," or engage in "pure speculation" unsupported by the record.

*Id.* at 318-19; *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  However, the determination of

disabled status for purposes of receiving SSI – a decision reserved for the Commissioner, only –

will not be affected by a medical source simply because it states that a claimant is "disabled," or

"unable to work."  20 C.F.R. § 416.927(e).

Plaintiff was examined by rheumatologist Alan M. Berg, M.D. on May 31, 2007.  (R. at

228 – 29).  Upon physical examination, Dr. Berg found that all tender points indicating the

existence of fibromyalgia were present on Plaintiff.  (R. at 228 – 29).  He thereafter diagnosed

Plaintiff with fibromyalgia.  (R. at 228 – 29).  Plaintiff described to Dr. Berg that light contact

with her skin could be painful, that her neck, shoulders, and hips were significant sources of

pain, that she felt stiff, and that she had difficulty with concentration.  (R. at 234).  He noted that

following a recent visit with a sleep specialist – Dr. Kolinar – that Plaintiff was considered to be

unable to sleep adequately "because of pain."  (R. at 234).  As treatment, Dr. Berg recommended

that Plaintiff engage in aerobic exercise daily.  (R. at 228 – 29).  Ideally, Plaintiff would work

towards attaining one hour of such activity per day.  (R. at 228 – 29).  Dr. Berg felt that this

would be the best way for Plaintiff to manage her fibromyalgia.  (R. at 228 – 29).  Dr. Berg also

increased the dosage of Plaintiff's prescription medications in an attempt to reduce her pain.  (R.

at 228 – 29).

Plaintiff was seen again by Dr. Berg on June 14, 2007.  (R. at 230).  Dr. Berg again

diagnosed fibromyalgia.  (R. at 230).  He found that the increased prescription medication

dosage did not improve Plaintiff's symptoms.  (R. at 230).  Plaintiff described completing

approximately twenty minutes of exercise, but claimed to require a rest period of approximately one hour after said activity.  (R. at 230).  Dr. Berg noted that Plaintiff tried to teach a Bible study class during the week, but was sometimes unable to meet the limited two class per week schedule.  (R. at 230).  Plaintiff attempted acupuncture for treatment, but to no avail.  (R. at 230). Dr. Berg indicated that a new drug approved for treatment of fibromyalgia would be available in a year, and that it might be worth trying.  (R. at 230).

At that time, Plaintiff believed that she could not continue to work, and indicated that she wished to apply for disability.  (R. at 230).  Dr. Berg explained that it was difficult to receive disability benefits for fibromyalgia because of the difficulty inherent in proving the existence of the disease.  (R. at 230).  Plaintiff's husband – having accompanied Plaintiff to her examination with Dr. Berg – felt that applying for disability would equate to "giving into the disease."  (R. at 320).  Dr. Berg stated, "I would say he has a point."  (R. at 230).

The ALJ looked at the two visits to Dr. Berg and concluded that his medical findings were inconsistent with Dr. Zelonis'.  To this end, he emphasized that Dr. Berg made no positive physical findings, that he wished for Plaintiff to engage in as much aerobic exercise as possible, and that Dr. Berg "inferred" that Plaintiff should attempt to continue to work.  (R. at 24 – 25). Fatal to the ALJ's discussion, here, is the failure to account for Dr. Berg's identification of *all* tender points required for a diagnosis of fibromyalgia, that a sleep specialist concluded that Plaintiff's pain interfered with her sleep, and that increased dosages of Plaintiff's medications had failed to improve her pain.  (R. at 228, 230, 234).  Also missing is an explanation regarding what evidence within Dr. Berg's findings squarely contradicted Dr. Zelonis' findings of limitation stemming from fibromyalgia pain.  While Dr. Berg recommended as much aerobic exercise as tolerable, Dr. Berg also stated that "ideally" Plaintiff should work towards engaging

in up to one hour of exercise per day.  (R. at 229).  He stated that Plaintiff should utilize an exercise machine that "hurts her the least." (R. at 229).  The ALJ failed to explain why these statements indicated that Plaintiff was capable of full-time work.  Upon remand, the ALJ should discuss Dr. Berg's findings more thoroughly.

As to Dr. Berg's inference that Plaintiff should attempt to work, his statement of agreement with Plaintiff's husband was ambiguous, at best.  It was hardly a ringing endorsement of a return to work, and was a far cry from a statement indicating that Plaintiff had the capacity to work a full-time job, eight hours a day, five days a week.  Moreover, the ALJ relied so heavily upon an *inference* that Plaintiff's twice treating rheumatologist felt that Plaintiff was capable of working, after rejecting numerous, explicit statements by Plaintiff's long-treating primary care physician that Plaintiff was completely disabled – according the latter physician's statements no weight because such determinations of "disability" are reserved solely to the ALJ.  (R. at 24).  Notwithstanding the fact that such statements are not dispositive, it is still relevant evidence.  Upon remand, the ALJ shall give greater consideration to the statements of both doctors – particularly when one opinion can at best be characterized as an inference, and the other may clearly be characterized as explicit statements.  *See Plummer v. Apfel*, 186 F. 3d 422, 429 (". . . an ALJ may not make speculative inferences from medical reports").

The ALJ also discussed the alleged lack of objective evidence of Plaintiff's fibromyalgia limitations, and that diagnostic tests run by various doctors, including Kolinar and Alberts, provided no support for Plaintiff or Dr. Zelonis.  (R. at 24 – 25).  The ALJ stated that the medical record lacked "the type of significant clinical laboratory abnormalities one would expect if the claimant were in fact disabled."  (R. at 24).

On February 4, 2007, following a sleep study, sleep specialist Charles M. Koliner, M.D. reported that Plaintiff experienced significant pain all over her body as a result of fibromyalgia, that she appeared to be in a hyperaroused stated, that her pain medication produced only transient relief, and that she suffered sleep disruption secondary to somatic symptoms.  (R. at 218).  What was excluded by Dr. Kolinar's testing was the existence of significant respiratory disturbance or primary disturbance of sleep architecture.  (R. at 218).  How these findings contradict those of Dr. Zelonis is not explained by the ALJ.  What is apparent from the findings is that Plaintiff suffered sleep disruption secondary to a number of factors, including *somatic symptoms*.  (R. at 218).  This should have been addressed by the ALJ.

Plaintiff was examined by neurologist Melvin C. Alberts, M.D. on three occasions beginning on August 25, 2005.  (R. at 250 – 51).  At the time, Dr. Alberts noted that Plaintiff had been diagnosed with fibromyalgia for several years.  (R. at 250 – 51).  She had recently seen a decrease in the effectiveness of her medication.  (R. at 250 – 51).  Dr. Alberts listed Plaintiff's symptoms as fatigue, diffuse myalgia, arthralgia, trouble with concentration and memory, and diffuse muscle stiffness.  (R. at 250 – 51).   Upon physical examination, Dr. Alberts did not find any neurologic abnormalities, found no muscle atrophy, and noted that Plaintiff's motor strength and coordination were intact.  (R. at 250 – 51).  He recommended electrodiagnostic testing.  (R. at 250 – 51).

Plaintiff was not examined again until April 8, 2008.  (R. at 247 – 48).  On that date, Dr. Alberts noted Plaintiff's continuing treatment for fibromyalgia.  (R. at 247 – 48).  Plaintiff complained of recent tremors in her hands and some visual disturbance.  (R. at 247 – 48).  A visit with an ophthalmologist revealed that Plaintiff suffered from optical migraines.  (R. at 247 – 48).  An MRI of the brain showed no abnormalities.  (R. at 247 – 48).  Dr. Alberts noted that Plaintiff

also continued to suffer pain in her muscles.  (R. at 247 – 48).  This pain was particularly notable in the neck, shoulders, and hips.  (R. at 247 – 48).  Plaintiff also had stiffness.  (R. at 247 – 48).  Upon examination, Dr. Alberts found no clear motor weakness.  (R. at 247 – 48).  A connective tissue work-up produced normal results.  (R. at 247 – 48).  No significant abnormalities were found, and Plaintiff's tremor was attributed to medication or past thyroid replacement therapy.  (R. at 247 – 48).  She was provided with additional prescription medication, and was advised to undergo an EMG.  (R. at 247 – 48).

At a follow-up with Dr. Alberts on May 13, 2008, a recently performed EMG returned normal results.  (R. at 252).  A new prescription medication was controlling Plaintiff's tremors.  (R. at 252).  Yet, Plaintiff was noted to be experiencing significant fibromyalgia-related pain that day.  (R. at 252).  Dr. Alberts suggested trying a new medication which had proven helpful for other fibromyalgia patients.  (R. at 252).

While citing Dr. Alberts' findings as support for her conclusion, the ALJ failed to specifically state why his notes contradicted Dr. Zelonis' findings.  The ALJ provided no evidence that normal MRI, EMG, and motor strength test results evinced a lack of debilitating pain stemming from fibromyalgia.  Dr. Alberts consistently noted Plaintiff's pain, and suggested alternative medications for treatment.  He did not question her sincerity.  There is no evidence adduced by the ALJ which can be said to contradict Dr. Zelonis' findings regarding Plaintiff's fibromyalgia-related limitations.  The ALJ should explore this issue on remand.

The ALJ makes note of a physical residual functional capacity assessment completed by state agency consultant Paul Fox, M.D. on June 18, 2008, as further support for her decision to deny Plaintiff benefits.  (R. at 325 – 29).  Following a review of Plaintiff's medical records – not including any of Plaintiff's physicians' statements regarding her physical capabilities – Dr. Fox

diagnosed Plaintiff with fibromyalgia.  (R. at 325 – 29).  He determined that she could

occasionally lift twenty pounds, she could frequently lift ten pounds, she could stand or walk six

hours of an eight hour workday, she could sit six hours, and she could only occasionally climb,

kneel, or crawl.  (R. at 325 – 29).  There was no narrative explanation accompanying this check-

box form.  (R. at 325 – 29).  Here, the ALJ failed to explain why these conclusions were

deserving of consideration given the lack of explanation by Dr. Fox.  *See Mason*, 994 F. 2d at

1065 ("Form reports in which a physician's obligation is only to check a box or fill in a blank are

weak evidence at best. [W]here these so-called 'reports are unaccompanied by thorough written

reports, their reliability is suspect'").  While this evidence certainly contradicts some conclusions

by Dr. Zelonis, the ALJ fails to explain why greater credit should be given to Dr. Fox as opposed

to Plaintiff's long-treating physician.  This should be addressed on remand.

        Finally, with regard to the ALJ's general statement that the medical record failed "to

reveal the type of significant clinical and laboratory abnormalities one would expect if the

claimant were in fact disabled," the ALJ did not provide sufficient evidence to bolster this

assertion.  (R. at 24).  The ALJ provided no evidence from the record that Dr. Zelonis'

conclusions regarding disability and functional limitation were, in fact, incorrect – even in the

face of "normal" test results and a lack of "positive" findings.  (R. at 24 – 25).  The ALJ did not

explore the nature of Plaintiff's condition, and she provided no evidence from the record that the

existence of the aforementioned test results or findings was inconsistent – or even associated –

with a diagnosis of fibromyalgia and the limitations stemming therefrom.  *See Lintz v. Astrue*,

2009 WL 1310646 at * 7 (W.D. Pa. May 11, 2009) (fibromyalgia sufferers often "manifest

normal muscle strength and neurological reactions and have a full range of motion.  In order to

diagnose fibromyalgia, a series of focal points must be tested for tenderness and other conditions

14

must be ruled out through objective medical and clinical trials.  Symptoms associated with

fibromyalgia include 'pain all over,' fatigue, disturbed sleep, stiffness, and tenderness occurring

at eleven of eighteen focal points") (citations omitted); *Smith v. Comm'r of Soc. Sec.*, 2009 WL

2762687 at *4 (W.D. Pa. Aug. 31, 2009) ("The Court can find no support for the ALJ's apparent

belief that aggressive treatment, including frequent hospitalizations, ER visits and surgeries, are

appropriate treatment modalities for a patient suffering from chronic fibromyalgia pain and

fatigue").

All of the treating medical sources on record noted Plaintiff's complaints of pain and

fatigue.  None questioned Plaintiff's credibility, even when normal range of motion and full

muscle strength were found.  None of these objective findings preceded a rejection of Plaintiff's

subjective complaints.  As such, the rejection of Dr. Zelonis' opinions by the ALJ constituted

nothing more than the making of a medical determination for which the ALJ was wholly

unqualified.  This is not substantial evidence.

2. *Subjective Complaints*

The ALJ also failed to give adequate consideration to Plaintiff's subjective complaints by

mischaracterizing the degree of Plaintiff's functional capability based upon Plaintiff's own

testimony.  (R. at 24 – 25).  The ALJ stated:

> The evidence indicates that the claimant is able to care for herself, drive, shop,
> read, and do some cooking and housework.  She is able to visit others at times and
> attend church services . . . [S]he tried to crochet or do puzzles and watch
> television in the evenings.  She stated that she cooked a complete meal once or
> twice a month.

(R. at 24).  This does not constitute substantial evidence.  The statement oversimplifies

Plaintiff's testimony.

15

The United States Court of Appeals for the Third Circuit has established that an ALJ should accord subjective complaints of pain similar treatment as objective medical reports, and weigh the evidence before her. *Burnett*, 220 F.3d at 122. Serious consideration must be given to subjective complaints of pain where a medical condition could reasonably produce such pain. *Mason*, 994 F.2d at 1067-68. Moreover, there need not be objective evidence of a subjective complaint, and the ALJ must explain her rejection of same. *Id.* (quoting *Green v. Schweiker*, 749 F. 2d 1066, 1071 (3d Cir. 1984)); *Burnett*, 220 F. 3d at 122. When medical evidence provides objective support for subjective complaints of pain, the ALJ can only reject such a complaint by providing contrary objective medical evidence. *Mason*, 994 F.2d at 1067-68. However, while pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F.3d at 122. Therefore, "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999) (emphasis omitted).

In her administrative hearing before the ALJ, Plaintiff stated that she suffered from pain, weakness, fatigue, and difficulty concentrating. (R. at 41, 43 – 44). She stated that these symptoms were worsening. (R. at 41). She stated that on a good day, she might be able to engage in sustained activity for forty five minutes to an hour. (R. at 42, 44). Following activity,

Plaintiff required significant rest even on good days.  (R. at 42).  Getting out of bed in the morning, brushing her teeth, and getting dressed were often exhausting activities requiring frequent rest periods.  (R. at 45).  Plaintiff slept frequently throughout the day.  (R. at 45 – 46).  Plaintiff attended church, but spent most of the service reclined on a couch in the church office.  (R. at 48).  Plaintiff might go shopping once per month.  (R. at 49).  She could not sleep through the night due to pain.  (R. at 49).  Depending upon her physical state, Plaintiff occasionally helped with laundry, cooking, and cleaning.  (R. at 51 – 52).  She often attempted walking for exercise.  (R. at 51 – 52).  She visited with others when she was able and was capable of driving.  (R. at 53).

The ALJ failed to explain how Plaintiff's *actual* account of daily activities lessened the credibility of Plaintiff's subjective complaints of pain and limitation.  The Court reminds the ALJ that sporadic and transitory activity is not substantial evidence of an ability to work.  *Fargnoli*, 247 F. 3d at 40 n. 5.  Further, "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."  *Smith v. Califano*, 637 F. 2d 968, 971 (3d Cir. 1985).  The ALJ points to no inconsistencies between Plaintiff's alleged pain and fatigue, and her daily activities.  Plaintiff's subjective complaints should be revisited by the ALJ on remand.

## VI.   CONCLUSION

Based upon the foregoing, the Court finds a lack of substantial evidence to support the ALJ's decision to deny DIB to Plaintiff.  "On remand, the ALJ shall fully develop the record and explain [his or her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ.  *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 – 01 (3d Cir. 2010).  *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414,

432 (W.D. Pa. 2010).  Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ.  *Id.* at 801 n. 2.

Accordingly, Plaintiff's Motion for Summary Judgment will be granted, to the extent it sought remand for reconsideration of the relevant issues, and denied, to the extent it sought an immediate award of benefits; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be vacated and remanded for further consideration not inconsistent with this opinion.  An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf:  All counsel of record.